UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAFAEL ALMANZAR,                              :     OPINION AND ORDER
                                              :
               Plaintiff,              :     23 Civ. 819 (GWG)
  -v.-                                        :
                                              :
SILVER STAR PROPERTIES CORP.,                 :
                                              :
               Defendant.              :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

I.    BACKGROUND

Almanzar filed this action on January 31, 2023, raising claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), among other statutes. See Complaint, filed Jan. 31, 2023 (Docket # 1). The parties were referred to the Southern District's Mediation Program on April 7, 2023, see Mediation Referral Order, filed Apr. 7, 2023 (Docket # 12), and following a mediation held on June 13, 2023, the Court was informed that the parties reached a settlement, see Order, filed June 16, 2023 (Docket # 14). The parties now seek approval of their proposed settlement. See Motion for Settlement Approval, filed Oct. 7, 2023 (Docket # 27) ("Mot.").[1]

II.    GOVERNING LAW

The Second Circuit has held that the settlement of FLSA claims "require[s] the approval of the district court or the [Department of Labor] to take effect." Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). This requirement derives from the fact that there is "unequal bargaining power as between employer and employee." Id. at 202 (quoting Brooklyn

---

[1] The Court initially denied the motion as plaintiff failed to attach a fully executed settlement agreement. See Memo Endorsement, filed Oct. 10, 2023 (Docket # 28). Plaintiff docketed the fully executed settlement agreement on October 18, 2023. See Proposed Settlement Agreement, filed Oct. 18, 2023 (Docket # 29).

Sav. Bank v. O'Neil, 324 U.S. 697, 706-07 (1945)).  In determining whether a settlement is "fair and reasonable," courts have considered the totality of circumstances, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

Fisher v. SD Protection, Inc., 948 F.3d 593, 600 (2d Cir. 2020) (quoting Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)).

III.    DISCUSSION

    A.    Amount Paid to Plaintiff and Non-Monetary Terms

As to the "range of possible recovery," we view this factor as invoking a comparison of the amount the plaintiff had a realistic hope of obtaining in relation to what the plaintiff actually obtained through the settlement.  Here, plaintiff alleged damages of approximately $78,750, of which $10,000 represents statutory penalties.  Mot. at 1-2.  The parties agreed to a settlement amount of $51,000, inclusive of attorney's fees and costs.  Id. at 2.  After costs of $477 are deducted, plaintiff will receive $33,682 and his attorney will receive $16,841, or one-third of the recovery.  Id.  While we might calculate the percentage of the amount sought that the settlement figure represents, we note that cases have approved a vast range of recoveries, including percentages as low as 12.5%.  See Zorn-Hill v. A2B Taxi LLC, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (12.5% of "best-case scenario"); see also Redwood v. Cassway Contracting Corp., 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (30% of total alleged damages); Gervacio v. ARJ Laundry Servs. Inc., 2019 WL 330631, at *1 (S.D.N.Y. Jan 25, 2019) (20% of total possible recovery).  The settlement here certainly falls within the range of approved recoveries.

Of course, to evaluate this factor, we must evaluate at the same time whether there were good reasons to settle for a recovery that is less — even far less — than the best possible outcome following trial. For this purpose we must consider the third factor — that is, what the risks were to obtaining a full recovery. Here, the parties have pointed to the fact that the defendant disputed both the work hours and the period of employment alleged by the plaintiff. Mot. at 2. Additionally, the parties have noted that there are doubts as to whether the wage notice and wage statement claims can be proven given that some notices were in fact provided. Id. at 1-2. The Court thus finds that there was good reason to significantly discount the potential full value of the claims in the effort to achieve a settlement.

The second factor is not described in the parties' motion. It is obvious, however, that there are burdens to all sides in pursing litigation, including the need to participate in discovery and appear for trial, as well as the inevitable delay in receiving payment.

Factors four and five similarly support the Court's conclusion that the proposed settlement amount is reasonable. Plaintiff was represented by experienced counsel, the parties participated in a mediation with one of the Southern District's volunteer mediators, and there are no indicia of fraud or collusion. Counsel was engaged to represent plaintiff on a one-third contingency fee basis, which in and of itself provided counsel with a strong incentive to settle the case for the maximum recovery possible.

We thus find the amount of the settlement to be reasonable. We have examined the non-monetary terms of the settlement agreement and find none that cast any significant burden on plaintiff.

B.      Attorney's Fees and Costs

The fairness review required by Cheeks "extends to the reasonableness of attorneys' fees and costs." Fisher, 948 F.3d at 606 (citing Cheeks, 796 F.3d at 206); accord Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226, 229-30 (S.D.N.Y. 2016) ("In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."). The terms of the settlement provide for plaintiff's counsel to be reimbursed for $477 in filing and service costs, and to be paid $16,841 in attorney's fees, which represents one-third of the amount recovered exclusive of costs. See Mot. at 2. A copy of the retainer agreement has been annexed to the application and provides that counsel will receive one-third of the net recovery. See Retainer Agreement, annexed as Ex. 2 to Mot. (Docket # 27-2), at 2.

We will not compare the one-third contingency payment to the actual hours expended by counsel — commonly called a "lodestar cross check" — to determine the reasonableness of the fee as many courts do. See, e.g., Huggins v. Chestnut Holdings Inc., 2022 WL 44748, at *3 (S.D.N.Y. Jan. 5, 2022). We decline to perform a "lodestar cross check" because it would have no bearing on our assessment of the reasonableness of the fee sought if it turned out that the "lodestar" for counsel's hours (that is, a reasonable hourly rate multiplied by the reasonable number of hours expended) is far less than the one-third contingency payment. A "lodestar cross check" is of course appropriate, and indeed required, where a court is being asked to award a percentage of a common fund in attorney's fees. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014). Here, however, there is no common fund created by the settlement. Instead, the plaintiff and the attorney agreed in advance that the attorney would be entitled to one-third of the settlement as attorney's fees. The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of

4

hours actually expended by the attorney. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended. See generally King v. Fox, 2004 WL 68397, at *5 (S.D.N.Y. Jan. 14, 2004) ("Contingency fees account for the risk taken in representing a client."). Therefore, in cases where attorneys spend fewer hours than would be expected to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed. "[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners." Blizzard v. Astrue, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007). Finding such contingency fee arrangements not "reasonable" under Cheeks whenever the attorneys achieve a significant benefit from the contingency arrangement will only serve to diminish the pool of attorneys willing to accept the risks in FLSA cases. This runs counter to one of the purposes of the FLSA — to provide an avenue for workers deprived of their just wages to seek redress in the courts — and is therefore rejected.

Instead, we must independently judge whether the percentage contingency arrangement is itself "reasonable." We believe such an analysis, however, must be conducted ex ante --- not in light of the actual number of hours expended after the contingency fee arrangement was made. Certainly, we would not find "reasonable" any contingency fee arrangement that was itself the product of fraud, deception, or overreaching. See generally Wells v. Sullivan, 907 F.2d 367, 369 (2d Cir. 1990) (contingency fee arrangement will not be enforced where there has been "fraud or overreaching"); In re Lawrence, 24 N.Y.3d 320, 339 (N.Y. 2014) (contingency fee arrangement enforced in the absence of "incompetence, deception or overreaching" or if "void at the time of the inception"). It is certainly possible that a contingency fee arrangement in a particular case

5

might be ex ante unreasonable — for example, where an employer had already offered to pay an employee full or substantial damages and the client hired the attorney merely to effectuate the settlement. Here, however, there is no indication of any such overreaching or of any deceptive conduct.

As to the amount of the contingent payment, we would have no compunction about disapproving a percentage amount that was outside of the range of what FLSA practitioners demand in the marketplace, even if the retainer agreement was not otherwise void or questionable. If the arrangement provided a payment in excess of that range, disapproving such a contingency would do nothing to diminish the market of available attorneys to take on FLSA cases. It is settled, however, that "one-third of the total award is the customary contingency percentage in FLSA cases." Garcia v. Atlantico Bakery Corp., 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016).

Thus, regardless of the number of hours actually spent by counsel on this case, the Court finds that the contingent fee arrangement was fair to plaintiffs and reasonable at the time it was made. Accordingly, the Court approves the attorney's fees and costs in the settlement agreement as they are consistent with the retainer agreement agreed to by plaintiff.

IV. CONCLUSION

For the reasons stated above, the application to approve the settlement (Docket # 27) is granted. This action is dismissed with prejudice and without costs except as may be stated in the settlement agreement. The Court will retain jurisdiction to enforce the settlement agreement. Any pending motions are moot. The Clerk is requested to close this case.

SO ORDERED.

Dated: October 24, 2023
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge